# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ANTONIO MCDOWELL, ) ) ) | |
| Petitioner, ) ) | Judge Joan B. Gottschall |
| v. ) ) | Case No. 04 C 4992 |
| MARCUS HARDY, ) ) | |
| Respondent. ) | |

## MEMORANDUM OPINION & ORDER

Petitioner Antonio McDowell was convicted of first degree murder, attempted murder, and aggravated vehicular hijacking following a bench trial in the Circuit Court of Cook County. *See U.S. ex rel. McDowell v. Hardy*, No. 04 C 4992, 2010 WL 3167202 (N.D. Ill. Aug. 6, 2010). According to the testimony at trial, on December 21, 1996, McDowell shot and killed Mario Castro in an apparent robbery attempt; Mr. Castro's nephew, Alberto Varela, gave chase, and in McDowell's subsequent attempt to flee the area, he shot at Varela and hijacked Ruth Morales-Santana's car. For these crimes, McDowell was sentenced to consecutive sentences of fifty-nine, twenty-nine, and fifteen years, respectively, for a total of 103 years.

Following various unsuccessful rounds through the state court review system, McDowell filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court, arguing *inter alia* that he had been denied effective assistance of counsel and that his due process rights were violated. While McDowell had exhausted his state remedies, this court concluded that all of his claims were procedurally defaulted save those based

on McDowell's claim that one of the eyewitnesses, Juan Medina (Mr. Castro's brother-in-law), had been subjected to an unduly suggestive procedure when Medina was shown two different photo arrays, both of which contained McDowell's image. *See McDowell*, 2010 WL 3167202, at *8. The court also determined that McDowell's claim of actual innocence, which McDowell believed would excuse his procedural default, was unavailing. The court noted that it would rule on McDowell's request for an evidentiary hearing and discovery after briefing on the merits. The court has now had the opportunity to consider the supplemental briefing on McDowell's non-defaulted due process and ineffective assistance of counsel claims. For the reasons set forth below, the court denies the petition and the request for evidentiary development, and grants McDowell a certificate of appealability.

## I. Legal Standard

As the Supreme Court has repeatedly emphasized, "a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (quoting *Wilson v. Corcoran*, 131 S. Ct. 13, 15 (2010)); *see Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), further narrows a reviewing court's inquiry. For claims that were not presented to the state court (and therefore did not receive an adjudication on the merits), a reviewing court may "dispose of the matter as law and justice require." *See* 28 U.S.C. § 2243; *Cheeks v. Gaetz*, 571 F.3d 680, 684-85 (7th Cir. 2009). But under AEDPA, once a petitioner's claim is "adjudicated on the merits in State court proceedings," a federal court can grant

relief only where the challenged state court decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States, *see* 28 U.S.C. § 2254(d)(1), or where the state court based its decision "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2). *See Greene v. Fisher*, 132 S. Ct. 38, 42 (2011); *Cheeks*, 571 F.3d at 684-85.

Under § 2254(d)(1), a state court's decision is contrary to clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision involves an "unreasonable application" of clearly established federal law where the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. Under the "unreasonable application" theory, the facts in the case under review not need be identical to the facts of the case that announced a legal principle: "'Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.'" *Winston v. Boatwright*, 649 F.3d 618, 625 (7th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). Still, the state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 65 (2003).

Under § 2254(d)(2), a challenge to the state court's factual determinations "will not succeed unless the state court committed an 'unreasonable error,' and § 2254(e)(1)

provides the mechanism for proving unreasonableness." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008). Section 2254(e)(1) establishes that factual findings based on the trial record—whether made by the state trial court or by the state court of review—are presumed correct unless the petitioner rebuts that presumption by clear and convincing evidence. *Ben-Yisrayl*, 540 F.3d at 546. Where the state court's decision "rests upon a determination of fact that lies against the clear weight of the evidence, however, that decision is by definition, a decision so inadequately supported by the record as to be . . . objectively unreasonable." *Id.* at 549 (quoting *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) (internal quotation marks omitted)).

## II. ANALYSIS

### A. Procedural Default

In the State's answer to McDowell's second amended petition for a writ of habeas corpus, the State spends significant time arguing that McDowell's claims are procedurally defaulted. The State claims that this court did not address whether McDowell's suggestive identification argument was fairly presented in his initial post-conviction petition, and that this court only addressed whether the argument was fairly presented on appeal after the post-conviction petition was denied. (*See* Answer Second Am. Pet. at 7.) Thus, the State again argues that this court should deny the claims as procedurally defaulted.

The court disagrees for two reasons. First, the identification issue likely was presented in McDowell's initial post-conviction petition. Reading McDowell's *pro se* post-conviction petition liberally, as this court must, *see Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004), McDowell specifically stated that the computer-generated photo of

4

him was presented in such a suggestive manner that the witnesses would not have been able to exclude him. (*See* Post-Conviction Pet. at 5, Ex. E.) But second, and more importantly, even if the State is correct that McDowell had not fairly presented the issue in his initial post-conviction petition, it makes no difference: "If the last state court to consider a constitutional claim addresses it on the merits, procedural default poses no barrier to a federal court's consideration of the claim." *Morales v. McCann,* No. 00 C 2656, 2010 WL 748203, at *29 (N.D. Ill. Feb. 25, 2010); *see Pole v. Randolph*, 570 F.3d 922, 936-37 (7th Cir. 2009) (finding no procedural default where the state appellate court agreed that a petitioner had not adequately raised two claims, but nonetheless went on to address the claims on the merits); *U.S. ex rel. Robinson v. Atchison*, No. 08 C 4027, 2012 WL 669049, at *6 (N.D. Ill. Feb. 27, 2012) ("But even assuming *arguendo* that this would otherwise result in default, the state appellate court actually addressed the issue on the merits. As a result, there is no procedural default at the state appellate level."). Here, the state appellate court reviewed McDowell's post-conviction pleadings and specifically stated that McDowell's "allegation that the photographic identifications were suggestive was not supported by the record." (*See* Ex. J at 8.) As the State recognizes, these allegations specifically relate to McDowell's claim that police showed Medina two sets of multiple photographs and argued that McDowell was the only person common to both arrays. (*See* Answer to Second Am. Pet. at 2-3.) The court's conclusion that certain claims are not procedurally defaulted because the state appellate court addressed the issues on their merits remains unchanged. *See McDowell*, 2010 WL 3167202, at *1.

**B. Due Process**

The crux of McDowell's suggestive identification due process claim is that the only evidence linking McDowell to the crime was unreliable witness testimony resulting from a tainted identification procedure. McDowell was identified at trial by three eyewitnesses: Medina, Mr. Castro's brother-in-law; Varela, Mr. Castro's nephew; and Morales-Santana, the hijacking victim. All three of these individuals identified McDowell from a photo array, all three picked McDowell out of a lineup, and all three identified McDowell in court as the person they observed on that fateful day.

Of these three, only Medina's identification is presently at issue.[1] McDowell claims that Medina was shown two photo arrays, and McDowell was the only person common to both arrays. (*See* Reply to Answer to Second Am. Pet. at 2.) Both Medina and Detective Guevara testified that on July 12, 1997, Medina was shown a book of photographs and asked whether he could recognize any of the people as being Mr. Castro's shooter. Medina identified McDowell's picture, but then asked Detective Guevara whether he could see a more recent photograph. (*See* Trial Tr. at B-64 to 65 and D-68 to 69.) Detective Guevara met with Medina a few days later bearing five black-and-white computer-generated photos, one of which was McDowell's. (*Id.* at B-65 to 66 and D-71 to 72.) Medina again selected McDowell's photograph as representing the person that shot Mr. Castro.

McDowell claims to have personally viewed the two photo arrays during trial. Not only does McDowell state that he was the only person to appear in both arrays, but

---

[1] In his Second Amended Petition, McDowell claimed that Detective Guevara showed all three witnesses a picture of McDowell before undertaking other identification procedures, and argued that this was improperly suggestive. This claim was procedurally defaulted, however, and is not addressed herein. *See McDowell*, 2010 WL 3167202, at *3 n.5. Nonetheless, McDowell continues to argue that the other witnesses' identifications were unreliable.

he claims that the second photo array contained images of Hispanics as well as African-Americans. (*See* Reply to Answer to Second Am. Pet. at 5, 7.) Combined with, *inter alia*, the seven-month period of time between the incident and Medina's identification and Medina's "doubt" (to use McDowell's word) during the first photo array, McDowell says that under the totality-of-the-circumstances test set out in *Neil v. Biggers*, 409 U.S. 188 (1972), this court must conclude that the identification procedure was unduly suggestive and tainted all of Medina's subsequent identifications.

As the State aptly points out, however, this claim is without the necessary factual basis. McDowell focuses his argument on the law, citing numerous cases that describe scenarios in which identification procedures were found to be unconstitutionally suggestive. But the court simply is not equipped to evaluate the issue without the underlying facts in hand. McDowell has not directed this court's attention to any evidence of record before the state court that establishes his two underlying complaints: that his picture was the only image the two photo arrays had in common, or that the second photo array included individuals who did not share McDowell's racial characteristics.

The Illinois Appellate Court felt the same way: it found that McDowell's allegations of suggestiveness were not supported by the record. In McDowell's reply brief to his post-conviction petition, he seemed to admit that the photo arrays were never made of record, at least on direct appeal; he also specifically noted that a pretrial motion to suppress identifications had been made but never ruled upon. This court reviewed that motion in the hope that it would shed some light on the evidence before the state courts, but the motion does not include any details about the makeup of the photo arrays, nor

does it contain images of the photo arrays themselves. Instead, the motion simply states that the procedures were unduly suggestive because "[t]he composition and construction of the photographic display and/or lineup was such as to improperly suggest identification of the accused as the perpetrator of the offense, i.e., the disparity in age, height, weight, dress, complexion and other distinguishing characteristics as well as the inadequate number of subjects presented for comparison" and that the officers engaged in "conduct"—which is unspecified—that "improperly suggest[ed] the identification of the accused as the perpetrator." (*See* Ex. 4 at C62-63.)

This court placed McDowell on notice that he had to further develop his claims in the supplemental briefing. *See McDowell*, 2010 WL 3167202, at *3 n.5 ("In the forthcoming briefing on the merits, McDowell is instructed to describe the basis for his (non-defaulted) Sixth Amendment/suggestive identification claim in sufficient detail for the court to meaningfully evaluate it."). Yet McDowell did not do so. Instead, he states only that "[t]here is ample reason to believe that further discovery would support Mr. McDowell's claims." (Reply to Answer to Second Am. Pet. at 15.) Be that as it may, as this court recently discussed in detail in *U.S. ex rel. Hooper v. Ryan*, No. 10 C 1809, 2012 WL 1230724, at **10-11, 26 (N.D. Ill. Apr. 12, 2012), only *after* McDowell's claims pass muster under § 2254(d) can the court consider allowing him to expand the record or take additional discovery. *See also Price v. Thurmer*, 637 F.3d 831, 837 (7th Cir. 2011) (with certain exceptions, "a district court may not take evidence in a habeas corpus proceeding that is based on section 2254(d)(1) . . . . As for a claim under section 2254(d)(2) . . . the statutory language appears to leave little or no room for an evidentiary hearing in the district court"); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). As

McDowell's due process claim cannot overcome the hurdle presented by AEDPA on the present record, the claim must fail.

In sum, McDowell successfully argued that he should be able to present the suggestive identification due process claim to this court because the claim had not been procedurally defaulted. This court agreed, finding that the claim had been addressed on the merits by the Illinois Appellate Court. *See McDowell*, 2010 WL 3167202, at *3 ("[T]he Illinois Appellate Court 'squarely addresse[d] and reject[ed]' McDowell's unduly suggestive identification claim.'"); *see also Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009) (noting that the merits of a claim are "effectively reached" by the state court where an issue is addressed on the merits in the context of one claim but would not be decided any differently in the context of another claim). AEDPA therefore governs this court's ability to review the claim, and without any evidence to suggest that the appellate court unreasonably determined any facts, or acted contrary to or unreasonably applied clearly established federal law, the court must reject McDowell's claim.

**B. Ineffective Assistance of Counsel**

The remaining ineffective assistance claim also relates to Medina's identification. McDowell claims that counsel was ineffective in failing to investigate whether Medina's identification was tainted. To prevail on this claim, McDowell would have to establish both his counsel's deficient performance and prejudice resulting therefrom. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Here, McDowell cannot prevail, because his due process and ineffective assistance claims "effectively present the same question": whether the identification procedure used with Medina was unconstitutionally suggestive such that counsel was ineffective for failing to challenge that procedure. *See*

*Sturgeon*, 552 F.3d at 612. And as this court has already discussed, the record is bereft of evidence to suggest that the procedure used with Medina was unconstitutionally suggestive. Thus, McDowell cannot establish a due process violation, "nor could his . . . counsel have rendered deficient performance by failing to raise the issue." *See id.*

Likewise, McDowell cannot establish prejudice. To establish prejudice, McDowell would have to show that but for his counsel's errors, there is a reasonable probability—*i.e.*, a probability sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Not only has he not established that counsel erred, but in discussing McDowell's actual innocence claim in its earlier opinion, this court noted the strength of the evidence against him:

> Even assuming *arguendo* that Guevara had set up an unduly suggestive identification in an effort to frame McDowell, a rational juror could still conclude that McDowell murdered Castro based on the compelling eyewitness testimony presented at trial. All three witnesses had ample opportunity to observe McDowell up close; all three witnesses later identified McDowell in open court.

*McDowell*, 2010 WL 3167202, at *6-7. McDowell has not presented any argument that persuades the court otherwise. Even without Medina's identification, McDowell was identified by Varela and Morales-Santana multiple times: in a photo, in a lineup, and in court. Even if McDowell had persuaded the court that counsel erred, he cannot persuade the court that its confidence in the outcome should be undermined. McDowell is not entitled to relief on his ineffective assistance claim.

## C. Certificate of Appealability

Finally, the court addresses McDowell's request for a certificate of appealability. "To receive certification under [28 U.S.C.] § 2253(c), the prisoner must show that

reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). This court cannot see any reasonable debate about McDowell's inability to prevail given the state court record before this court. However, this court recognizes that the precepts set out in *Cullen v. Pinholster* have only very rarely been addressed by the Seventh Circuit; indeed, as of the date of this opinion, only six Seventh Circuit opinions cite *Cullen*, and of these only a few specifically discuss a petitioner's ability to expand the record. If McDowell was permitted discovery, he might prevail on his constitutional claims, and so the court grants the certificate of appealability as to the limited question of whether McDowell should be permitted further discovery.

## IV. CONCLUSION

For the reasons set forth above, the court denies McDowell's petition for a writ of habeas corpus, and denies his request for an evidentiary hearing and further discovery. Because the Seventh Circuit has not yet had much occasion to address the issues raised by *Cullen v. Pinholster*, this court grants a certificate of appealability for that limited purpose.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 17, 2012