In the

# United States Court of Appeals

## For the Seventh Circuit



CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 12-2967

ANTONIO MCDOWELL,

*Petitioner-Appellant,*

*v.*

MICHAEL LEMKE, WARDEN,
STATEVILLE CORRECTIONAL CENTER,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:04-cv-04992 — **Joan B. Gottschall**, *Judge.*

ARGUED SEPTEMBER 26, 2013 — DECIDED DECEMBER 12, 2013

Before POSNER, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Over fifteen years ago, Antonio McDowell was convicted in an Illinois trial court of committing a murder and carjacking on a single December afternoon. Today, he seeks a writ of habeas corpus, arguing that the processes used to identify him as the perpetrator were fatally flawed. Because we find that he procedurally defaulted these

claims by failing to adequately present them before each level of the Illinois courts, we decline to grant his petition.

## I. BACKGROUND

### A. The Murder and Carjacking

At approximately 3:00 PM on December 21, 1996, Martha Castro looked out her window and saw her husband, Mario Castro, lying on the ground. A man dressed in a black cap, jacket, and pants was leaning over him and searching his pockets. Mrs. Castro and her nephew, Alberto Varela, ran outside. Varela struck the man dressed in black. In response, the man in black picked up a gun and fired it once before running into the alley. Varela followed him briefly, but stopped once the man fired the gun a second time. Mr. Castro later died from a gunshot wound to his shoulder.

The Castros' neighbor, Juan Medina, looked out his window when he heard the gunfire. He saw the man in black searching Mr. Castro's pocket. Medina then walked into the other room to tell his wife Mr. Castro had been shot. When he returned, he saw Varela hit the man in the shoulder and the man fire a shot at Varela.

A few blocks away, Ruth Morales-Santana turned into the alley. When she parked and got out of her car, the man in black approached her, gun drawn, and demanded her car keys and purse. Morales-Santana handed over her bag and keys and the man climbed into her car.

### B. The Police Investigation

At 3:30 PM the same day, Detective Renaldo Guevara traveled to the scene of the shooting, where he interviewed

No. 12-2967                                                          3

Varela and Medina. He then began looking for a black male in his early twenties who was about five foot seven or five foot eight inches tall and was wearing a black jacket and cap.

Detective Guevara did not find anyone right away. Almost seven months later, on July 12, 1997, Guevara went to Medina's home to show him some images from a book containing Polaroid photos. Medina identified one of the pictures on the third page of the book as someone who "looked like" the man in black, but asked for a more recent photo to be sure.

Later that month, on July 21, Detective Guevara returned with an array of five black-and-white photographs. Medina picked the photo of petitioner, Antonio McDowell, as depicting the man he saw standing over Mr. Castro's body. That afternoon, Guevara took the five-photo array to Morales-Santana's home, where she also selected the photo of McDowell. The next day, Guevara took the set of photos to Varela's home, and he similarly identified McDowell as the man in black. On July 23, 1997, Medina, Morales-Santana, and Varela each viewed a lineup and identified McDowell as the offender.

*C. McDowell's Trial, Conviction, and Direct Appeal*

Before his trial, McDowell filed a motion to suppress the identification testimony, alleging that the police had staged an improper one-on-one photo show up and used overly suggestive photo arrays that resulted in mistaken identifications. Specifically, McDowell argued that the photo array contained too few people and that "the disparity in age, height, weight, dress, complexion, and other distinguishing characteristics … was improperly conducive to the

misidentification of the accused." The record does not indicate that the state court ever ruled on the motion. McDowell did not continue to argue the point at trial.

At a bench trial, the State presented eyewitness identification testimony from Mrs. Castro, Medina, Varela, and Morales-Santana.[1] Each testified as to their observations at the time of the offenses. Detective Guevara also testified about his investigation and interviews with these witnesses. The State presented no physical evidence linking McDowell to the murder and carjacking. McDowell himself did not testify, but presented an alibi through his good friend, Kenneth Beecham.

At the close of the evidence, the judge credited the State's witnesses, noting that their accounts had corroborated each other and recounted the same sequence of events. He found petitioner guilty of first degree murder, attempted murder, and aggravated vehicular hijacking, and imposed a sentence of 103 years.

On direct appeal, McDowell argued that the trial court abused its discretion in imposing a 103-year sentence based upon his lack of remorse, and that the use of consecutive sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The state appellate court affirmed, and the state supreme court denied McDowell's petition for leave to appeal.

### D. State Post-Conviction Proceedings

McDowell then filed a pro se state post-conviction petition pursuant to 725 ILCS 5/122-1–5/122-7. In part, he argued that

---

[1]  McDowell waived his right to a jury trial.

he was arrested without probable cause. To support this argument, McDowell asserted that the identification supporting his arrest was tainted because a computer-generated photo was "presented to the victims in … a suggestive manner." In later pleadings, McDowell additionally claimed that Medina's identification was tainted because his was the only image common to the two photo sets Guevara showed Medina (the photo book, from which Medina tentatively identified McDowell, and the five-photo array all three witnesses were shown).

The trial court denied the petition, and McDowell appealed, arguing only that his trial and appellate counsel were ineffective. Specifically, McDowell argued that his counsel should have challenged whether there was probable cause to support his arrest. In so arguing, he quoted his arguments from his original post-conviction petition.

The state appellate court affirmed McDowell's conviction. It rejected McDowell's ineffective assistance claim, noting that he was arrested based on three separate photo identifications, his allegation that the arrays were suggestive was not supported by the record, and that there was no evidence that the eyewitnesses were told to identify McDowell. McDowell then filed a petition for leave to appeal, which the Illinois Supreme Court denied.

*E. Habeas Proceedings*

Pursuant to 28 U.S.C. § 2254, McDowell filed a pro se petition in federal court for a writ of habeas corpus on July 25, 2004. The district court appointed counsel, and McDowell filed an amended, counseled petition. In his amended petition,

McDowell alleged that Detective Guevara had framed him for murder after he refused to falsely identify a suspect as the person who shot him in the hand earlier that year. Specifically, he alleged that the eyewitness identifications arising from the lineup were suggestive because Guevara showed a single picture of him to the witnesses before they participated in the lineup.

McDowell also argued that any procedural default should be forgiven because he could establish he was actually innocent of the crime, and thus a grave miscarriage of justice would occur were he not allowed to challenge his conviction in federal court. He based this claim on the assertion that Detective Guevara framed him. McDowell submitted two pieces of evidence supporting this claim: an affidavit he made himself and a collection of affidavits and transcripts detailing Detective Guevara's misconduct in other, unrelated cases.

In his affidavit, McDowell averred that police detectives visited his mother's house on July 14, 1997, and told him he should go to the station for an interview. When McDowell went to the station on July 23, Detective Guevara allegedly handcuffed him to a wall for several hours in an attempt to coerce him into falsely identifying someone as the person who shot him in the hand earlier that year. Guevara then purportedly convinced him to participate in a lineup. While McDowell was at the station, another detective showed McDowell a picture of himself. The detective allegedly said that Guevara had used the picture to implicate McDowell before the witnesses.

No. 12-2967                                                              7

The evidence of Detective Guevara's misdeeds consisted of affidavits, depositions, and trial testimony from other criminal defendants, mostly convicted felons, alleging that Detective Guevara had coerced them to confess or to identify a specific person as a perpetrator. None of the evidence related specifically to McDowell's case.

The district court accepted McDowell's contentions in part and rejected them in part. It found that McDowell had procedurally defaulted his argument that the lineups were unduly suggestive based on the allegation that Detective Guevara showed a single picture of McDowell to the witnesses before they performed any other identifications. The court also ruled that McDowell had procedurally defaulted any identification claims as to witnesses other than Medina. Further, McDowell had not established actual innocence sufficient to excuse these defaults, because his affidavit was inconsistent with the chronology of the investigation and testimony at trial, and because McDowell's submissions concerning Detective Guevara's past misdeeds were not direct evidence of wrongdoing in McDowell's case.

The district court did find, however, that McDowell had not procedurally defaulted a generic "Sixth Amendment/suggestive identification claim" or his ineffective assistance claim relating to counsel's failure to challenge the identifications. After substantive briefing, the district court rejected the suggestive identification claim on the merits. It held that the claim lacked any factual basis because McDowell did not provide any evidence (1) that his photo was the only image common to the two photo arrays Medina saw or (2) that the second photo array included individuals who did not share

McDowell's salient characteristics. Because the suggestiveness claim failed, and because of the significant evidence against him, the court also found that McDowell could not establish that counsel was ineffective for failing to pursue the suggestiveness issue at trial. The trial court declined to grant a certificate of appealability.

McDowell filed a notice of appeal from the district court's denial of his petition and an application for a certificate of appealability with this court. This court granted the certificate on two issues: (1) whether photo arrays in which McDowell was the only individual in common and which contained individuals of a different race were improperly suggestive and (2) whether McDowell fairly presented his due process claim in the state courts.

## II. Analysis

On appeal, McDowell argues that he fairly presented his due process claim in state court, that the photo arrays were unduly suggestive, violating his due process rights, and that he has presented sufficient actual innocence evidence for us to hear his other, procedurally defaulted claims. We find that because McDowell did not present his due process claim to each level of the Illinois state courts, the claim is procedurally defaulted.[2]

---

[2]  We will not reach the claims the district court found to be procedurally defaulted. These claims are outside the certificate of appealability we granted, and we decline to exercise our discretion to hear them now. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).

No. 12-2967                                              9

McDowell puts forth two factually-distinct suggestive identification claims: (1) showing a witness two separate photo arrays in which McDowell was the only individual in common was unduly suggestive and (2) showing a witness a single photo array which contained individuals of different races was unduly suggestive. The district court found that the first of these claims—the "individual-in-common" claim—was not procedurally defaulted. *United States ex rel McDowell v. Hardy*, No. 04-cv-04992, 2012 WL 2921512 at *2 (N.D. Ill. July 17, 2012). It did not specifically determine whether the second claim—the "mixed-race photo array" claim—was defaulted, but discussed the theory in its general discussion of the suggestive identification claim. *Id.*

The government contends that both of these arguments were forfeited in the district court because McDowell did not include them in his habeas petition. It relies on Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires that a habeas petition "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." According to the government, Rule 2(c) should be construed strictly, such that any argument not included in the habeas petition, even if raised and ruled on by the district court, is forfeited. But our cases have not focused solely on whether an argument was developed in the initial petition. Rather, they consider whether the argument was adequately presented to the district court. *See Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008) (focusing on whether presentation of issue in reply brief gave the district court "the first opportunity to rule with full briefing and consideration."); *Winsett v. Washington*, 130 F.3d 269, 274 (7th

Cir. 1997) ("we cannot consider [petitioner's] voluntariness challenge because he did not present it to the district court."). McDowell did present these arguments to the district court, albeit in a reply brief, and the state responded in a surreply. The district court recognized the legal basis for the claims and ruled that they were insufficiently grounded in record evidence for it to rule on them. The argument was thus before the district court and not forfeited.

This leaves the question of procedural default. Although the district court found that McDowell had not procedurally defaulted the suggestive identification claims described above, we are not bound by its ruling. We review the district court's procedural default ruling *de novo*. *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

To avoid procedural default, a habeas petitioner must "fairly present" a claim to each level of the state courts. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Both the operative facts and controlling law must be placed before the state courts. *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). At bottom, we must consider whether "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Id.* This analysis typically focuses on four factors: (1) whether the habeas petitioner relied on federal cases that engage in constitutional analysis, (2) whether the petitioner relied on state cases that apply constitutional analysis to similar facts, (3) whether the petitioner framed the claims in terms so particular as to call to mind a specific constitutional right, and (4)

No. 12-2967                                                11

whether the petition alleges a pattern of facts within the mainstream of constitutional litigation. *Id.*

In Illinois, which has a two-tiered appellate review system, a petitioner must present a claim at each level of the state court system, either on direct appeal or in post-conviction proceedings. *Lewis*, 390 F.3d at 1025 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Because McDowell raised only sentencing issues on direct appeal, our analysis focuses on the arguments he made on post-conviction review.

McDowell did not fairly present his suggestive identification claim to the trial court that heard his post-conviction petition. He stated only, amid an argument about whether the police had probable cause to arrest him, that a computer-generated photo was shown to the eyewitnesses "in such a suggestive manner that there was little room to exclude him." We must construe this pro se petition liberally. *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010). But even giving McDowell the benefit of the doubt, this single sentence does not suffice to alert the court of the federal, constitutional nature of McDowell's claim. McDowell did not reference either the Illinois or federal constitutions, cite any cases, or provide any facts on which the Illinois court could have evaluated his claim. *Cf. Ward*, 613 F.3d at 698 (finding that a pro se habeas petitioner had fairly presented his ineffective assistance of counsel claim to the state courts where he cited the Sixth and Fourteenth Amendments, a leading Supreme Court case, a number of state cases involving constitutional analysis, and facts that placed his claim within the mainstream of constitutional analysis).

Further, this single sentence appears within the discussion of McDowell's probable cause claim. We have, at times, found a claim to be fairly presented where the only discussion of it appeared within the discussion of another claim. But in those cases, we have required that the nested claim be either (1) framed so it could stand on its own, were it presented in a different section of the post-conviction petition or (2) supported by "very substantial analysis" throughout the petition. *Lewis*, 390 F.3d at 1027 (finding *Brady* claim not defaulted where, although it appeared within an ineffective assistance of counsel claim, the claim "did not advance a theory as to why [petitioner's] attorney was ineffective for failing to raise this issue; it simply suggested that the evidence was improperly destroyed); *Rittenhouse v. Battles*, 263 F.3d 689, 696 (7th Cir. 2001) (finding challenge to jury instructions not defaulted where, although petitioner's only discussion of the jury instructions came within an ineffective assistance of counsel argument, he presented the court with a "very substantial analysis" of alleged problems with the jury instructions).

Usually, a finding that a habeas petitioner did not fairly present his claim to one level of the state courts would doom his quest for the writ. But in McDowell's case, the district court found the suggestive identification claim was not procedurally defaulted because the Illinois appellate court addressed it on the merits. Where the last state court to consider the issue does not rely on a procedural bar, but instead addresses it on the merits, there is no procedural default. *Pole v. Randolph*, 750 F.3d 922, 937 (7th Cir. 2009). And the district court cited the Illinois appellate court's statement that "McDowell's allegation that

the photographic identifications were suggestive was not supported by the record" as proof that the court addressed McDowell's claim on the merits. *McDowell*, 2012 WL 2921512 at *2.

But this single statement by the Illinois court was embedded in its discussion of whether McDowell's counsel was ineffective. The court did not address any of the federal constitutional law on the issue, nor reference the Due Process clause. It is not clear it addressed the merits of the suggestive identification claim as a federal, constitutional issue, rather than as a factual matter. All the Illinois court found was that McDowell's claim of suggestiveness was not supported by the record. With no factual predicate, it could not have decided, on the merits, whether the arrays McDowell challenged were so suggestive that they denied him due process. Therefore, we find that McDowell procedurally defaulted any claim that the processes used to identify him as the perpetrator were unduly suggestive.

It is true that a habeas petitioner can avoid procedural default if he can establish either cause and prejudice or that the court's failure to consider the defaulted claim would result in a "fundamental miscarriage of justice." *Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010). McDowell does not argue that he can establish cause and prejudice, so we will focus on the latter exception.

The fundamental miscarriage of justice standard erects an extremely high bar for the habeas petitioner to clear. It applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted.

*Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Such proof must take the form of "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner must prove, based on this evidence, that it was more likely than not that no jury would have convicted him at trial were the new, exculpatory evidence available. *Id.* at 327.

McDowell did present new evidence with his habeas petition: an affidavit in which he stated that Detective Guevara framed him and a plethora of affidavits and transcripts that contain allegations of misconduct against Detective Guevara in other cases. This evidence, however, is insufficient to meet the actual innocence bar; adequate evidence is "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). Only such "powerful" evidence can establish that it is more likely than not that no jury would have convicted a habeas petitioner.

McDowell's affidavit is obviously self-serving and contains no indicia of reliability. Such "eleventh hour" affidavits, containing facts not alleged at trial and accompanied by no reasonable explanation for the delay are inherently suspect. *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011) (citing *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring)). Further, none of the witnesses mentioned any irregularities in the identification procedures. McDowell's argument essentially counters the evidence the State presented

No. 12-2967                                                              15

at trial with his own version of the events; this relatively weak evidence cannot excuse his procedural default. *See Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010).

The voluminous evidence of Detective Guevara's misfeasance in other cases similarly fails to establish that McDowell was actually innocent. Even if we believed all of the allegations, they remain collateral to McDowell's case. While they may be able to establish that Detective Guevara intentionally induced erroneous identifications in other cases, they cannot definitively prove he did so in McDowell's case. Rather than establishing McDowell's innocence, they tend to impeach Guevara's credibility. And latter-day impeachment evidence "seldom, if ever, make[s] a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account … ." *Sawyer v. Whitley*, 505 U.S. 333, 334 (1992).

### III. CONCLUSION

Because McDowell procedurally defaulted his suggestive identification claims by failing to present them to each level of the Illinois state courts and cannot establish that a fundamental miscarriage of justice will occur if we do not review his claims, we decline to grant his petition for a writ of habeas corpus and AFFIRM the decision of the district court.